IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESCO INSURANCE CO., : | |
|     Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | NO. 08-5449 |
| : | |
| ALPHA BAGAYOKO, : | |
|     Defendant. : | |

**Memorandum Opinion and Order**

**RUFE, J.**                                                                 May 4, 2010

Plaintiff Wesco Insurance Company filed a Complaint for Declaratory Judgment regarding Defendant's claim for uninsured motorist benefits under an automobile insurance policy Wesco issued to Defendant's employer, T.A.P. Courier Systems, Inc. The Court held a one day bench trial on the limited issue of whether a "phantom" motor vehicle caused Defendant's accident. After hearing testimony, summarized below, the Court concludes that a phantom vehicle was the cause of Mr. Bagayoko's accident.

**Evidence**

On September 28, 2007, Defendant, 35 year old Alpha Bagayoko, was severely injured in a motor vehicle accident on Mearns Road in Warminster, Pennsylvania. On the day of the accident, he was driving a twenty-four foot long "straight truck" for his employer, T.A.P. Courier Systems, Inc. Mr. Bagayoko was in a coma for nine days following the accident.

Less than an hour after he awoke from the coma in Hahnemann University Hospital, Mr. Bagayoko spoke to police about the accident. He reported that a car pulled out of a driveway in

1

front of him on Mearns Road, causing him to swerve to the right, apply the brake "hard and more hard," and ultimately lose control of the vehicle.

At the hearing, Mr. Bagayoko testified that, on the day of the accident, he checked his truck's mechanical condition before beginning his deliveries. He concluded that the brakes and tires were in good condition. He then loaded his truck and began his deliveries. The day was clear and the roads were dry. Mr. Bagayoko testified that he had been driving that same truck for approximately one year.

Mr. Bagayoko also testified that after his morning deliveries he stopped for lunch at KFC. After lunch, he continued his pick-up and delivery schedule on and near Mearns Road. Mr. Bagayoko testified that he was very familiar with Mearns Road and drove there nearly every day. Around 2 p.m., he was driving northbound on Mearns Road at approximately 35 to 40 miles per hour. He saw two driveways entering the roadway from the left. There were no vehicles in the first driveway. In the second driveway, he could see two parked vehicles (a van and an eighteen foot truck) and a sign. He did not see any moving vehicles in either driveway. Mr. Bagayoko alleges that a white vehicle (possibly a Ford Taurus) made a left hand turn out of the driveway and into his direct path at a speed of approximately 15 miles per hour. As the white vehicle was too close to Mr. Bagayoko's truck, he swerved to the right and hit his brakes hard in order to avoid an accident. Mr. Bagayoko was not wearing his seatbelt. His next memory was waking up in the hospital nine days later.

Richard Simpson was the only eyewitness to the accident. He was driving southbound on Mearns Road in a white Honda Civic on the day of Mr. Bagayoko's accident, having just turned left onto Mearns Road from Almshouse Road. He concurs with Mr. Bagayoko as to the weather

and road conditions that day, and also testified that Mearns Road is a winding, two-lane, rural road with little traffic.  As he was driving up a small hill, traveling southbound on Mearns Road, he saw only the top of Mr. Bagayoko's trucking coming around a curve northbound, and noticed it bounce or dip as though it had lost control.  He could not see the whole truck because of the trees and the curve of the road.  At that time, Mr. Simpson could not see the driveway from which Mr. Bagayoko alleges the white Ford emerged.  He testified that thereafter, he was so focused on Mr. Bagayoko's truck that he did not notice the driveway.  After seeing the truck bounce or dip, he watched the truck weave erratically.  As he drove towards Mr. Bagayoko's truck, he saw the truck leaning as though ready to turn over.  No more than ten seconds after first seeing the top of the truck bounce or dip, in fear for his life, Mr. Simpson swerved off the road into bushes on the right in order to avoid a collision with Mr. Bagayoko's truck.  He was not injured in the accident, but testified that he felt "really dazed" in the minute or so after his car went off the road.

Mr. Simpson could not confirm Mr. Bagayoko's account of a white vehicle pulling out of a driveway onto Mearns Road.  He testified that he does not remember seeing any other vehicles on Mearns Road in the minute or so he was on the road prior to the accident.  In response to the question: "At any time after you had entered Mearns Road, did any cars pass you traveling in the opposite direction?" he aswered: "Okay.  Not that I know.  No, I can't remember to be honest with you, no... I didn't see any other traffic, no."  He also testified that he did not see a vehicle turn onto Creek Road, where northbound traffic on Mearns Road can make a right hand turn shortly beyond the driveways on the left.

Plaintiff's accident reconstruction expert, John Desch, a civil engineer, testified that Mr.

Bagayoko could not have avoided a collision with the "phantom vehicle" if, in fact, he was traveling 35 to 40 miles per hour[1] and the phantom vehicle turned into his path less than one car-length in front of him traveling at 15 miles per hour (all estimates made by Mr. Bagayoko in his desposition testimony). He also concluded that if there had been a second northbound vehicle, Mr. Simpson would remember seeing it. Therefore, Mr. Desch concluded, there must not have been such a vehicle at all. Rather, he opined, the accident was caused by Mr. Bagayoko drifting slightly off the roadway to the right as the curve became tighter, over-steering to the left in an attempt to correct his position, encroaching into the southbound lane, and then losing control swerving back into the northbound lane. The truck then hit the concrete base and pole, and overturned throwing Mr. Bagayoko from the cab.

Defendant's expert, Sergeant Andrew Aninsman, is a police officer trained in accident reconstruction through the police force. Sergeant Aninsman testified that the evidence from the accident scene was consistent with Mr. Bagayoko's assertion that he had taken evasive action when a vehicle pulled out of the second driveway into his lane of travel. He reacted first by swerving right, and then by hitting the brakes and attempting to correct his road position. Mr. Bagayoko was about 105 to 110 feet from the second driveway when he veered off the roadway, indicating that, despite his perception that the vehicle was only a car-length away, he first saw the white vehicle when he was more than 110 feet from it. He testified that generally an accident occurs in a matter of 5 to 7 seconds, and a person's sense of time and distance is affected by how quickly events unfold and the fact that the vehicles are constantly moving throughout the events.

---

[1] Based on tire marks left on the roadway, the expert calculated that Mr. Bagayoko was driving approximately 45 miles per hour. The speed limit on the road is 40 miles per hour.

He disagreed with Mr. Desch's opinion that Mr. Bagayoko's truck would have hit the white vehicle had it actually been present, noting that Mr. Bagayoko's vehicle would have slowed when it went off the road into the dirt and grass, even before braking, and the white vehicle would have been accelerating as it came out of the left hand turn. Taking these factors into account, as well as the physical evidence suggesting that Mr. Bagayoko actually noticed the vehicle at a distance of at least 110 feet, despite his perception that it was much closer, he concluded that a phantom vehicle could have caused the accident.

Sergeant Aninsman explained that Mr. Simpson's inability to recollect a white vehicle pulling out of the driveway or driving northbound on Mearns Road was not surprising under the circumstances. Mr. Simpson was driving home when suddenly he saw a truck which appeared to be losing control. Within seconds, he was taking evasive action to avoid a collision with a twenty-four foot box truck. From the moment Mr. Simpson noticed the top of the truck dip, the fear of collision would have focused his attention on Mr. Bagayoko's truck, to the exclusion of other aspects of his surroundings. From his vantage point when he first noticed the truck dip, he would not have been able to see an automobile directly in front of the truck. Thereafter, his memory may never have registered the existence of other vehicles in the area, due to the trauma and the attentional factors in this situation.

**Discussion**

This Court has been asked to decide whether a phantom vehicle was the proximate cause of Mr. Bagayoko's accident.

The insurance policy's definition of an "uninsured motor vehicle" includes one for which

5

"neither the driver or owner can be identified." Relevant to this case, the policy covers accidents in which an uninsured vehicle causes an accident "resulting in 'bodily injury' to the 'insured' without hitting an 'insured,' a covered 'motor vehicle' or a vehicle the 'insured' is 'occupying.'" Under the terms of the policy, a claimant must prove the facts of the accident if, as here, there is no physical contact between the alleged hit-and-run vehicle and the insured's vehicle.[2]

Under Pennsylvania law, the burden of proving that a phantom vehicle existed,[3] and that it caused the accident by its negligence,[4] is on the claimant. "[T]he trier of fact must satisfy itself that the witness who testifies as to the 'phantom vehicle' is a reliable individual and that his testimony meets the various tests of credibility that a trial of fact will impose."[5] The claimant must convince the Court that it is more likely true than not that the accident occurred substantially as he contends.[6]

The Court finds that Defendant Bagayoko is a credible witness. The Court is persuaded as to Mr. Bagayoko's credibility for several reasons. First, Mr. Bagayoko has provided a consistent account that a white vehicle caused the accident since within an hour of awakening from his coma, when he first spoke to police. Second, Mr. Bagayoko's memory appears to be intact. And third, the Court had the opportunity to observe his demeanor while he was providing testimony, and his demeanor supported a finding of credibility.

---

[2] Exhibit A, Endorsement No. CA 21 92 08 06, Section (F)(2).

[3] Pak v. Allstate Insur. Co., 1992 WL 540825 (Pa. Comm. Pl., July 17, 1992).

[4] Nationwide Mut. Ins. Co. v. Cassalia, 1991 WL 78192 (E.D.Pa., May 6, 1991).

[5] Scheld v. Travelers Insur. Co., 14 Phila. Co. Rprt. 536, 540 (Pa.Com.Pl. 1986), citing Webb v. United Services Automobile Assoc., 227 Pa. Super. 508 (1974).

[6] State Farm Mutual Automobile Insur. Co. v. DiPietro, 1989 WL 140539 (E.D.Pa., Nov. 15, 1989).

As to the proximate cause of the accident, the Court finds that the driver of the phantom vehicle failed to yield to traffic traveling on Mearns Road when entering the roadway from a driveway. The evidence at trial supported Mr. Bagayoko's testimony that he was driving at or near the speed limit at the time of the accident, and that he attempted to avoid an accident once he spotted the white vehicle. Therefore, the Court finds that the driver of the phantom vehicle was negligent in failing to yield as required by the rules of the road, and this failure to yield was the proximate cause of Mr. Bagayoko's accident

A witness to the accident, Richard Simpson, testified that he did not see a white vehicle. Although the Court finds Mr. Simpson a credible witness, the Court is persuaded that Mr. Simpson could not see what first caused Mr. Bagayoko to lose control of his vehicle, due to the contours and landscaping of the roadway. In addition, the Court believes that Mr. Simpson's attention was so focused on Mr. Bagayoko's out-of-control truck, which posed an imminent risk of danger to him, that he justifiably failed to notice a white vehicle passing him or turning onto Creek Road.

Wesco presented expert testimony from accident reconstruction expert John Desch. Although the report makes it clear that Mr. Bagayoko misperceived how close the white vehicle was when it pulled out in front of him, there is nothing in that report which persuades the Court that Mr. Bagayoko is incorrect about the existence of the white vehicle or the cause of his accident.

Mr. Bagayoko presented expert testimony from accident reconstruction expert Sergeant Aninsman. Plaintiff filed a *Daubert* motion, seeking to prevent Sergeant Aninsman from testifying as to any "human factors" impacting on the witnesses' perceptions and recollections of

the accident, as he is not a psychologist or other trained social scientist. The Court heard argument on this Motion during the trial. Sergeant Aninsman testified that he has had formal training and extensive hands-on experience in assessing people's reactions to events and the impact of those reactions on their recollection of events. He testified that, through training and experience, he has learned that even an impartial and credible witness may have a faulty or unreliable memory for events, and therefore eyewitness testimony is generally not the strongest evidence in a case. This is particularly true, he added, when the witness is endangered or witnesses something traumatic. The Court did not find that Sergeant Aninsman's report or testimony was based on psychological or human factors beyond his expertise as an accident reconstruction expert, and this testimony was admitted in full, over Plaintiff's objection, with credibility to be determined by the Court. This testimony supported Mr. Bagayoko's contention that a phantom vehicle was the cause of his accident.

Based on the evidence before it, the Court finds that Mr. Bagayoko has proved that his accident was caused by an uninsured motor vehicle, as defined by the policy, and he is entitled to coverage under that policy, subject to the policy limits and other valid terms of the policy.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESCO INSURANCE CO., <br>     Plaintiff, <br><br> v. <br><br> ALPHA BAGAYOKO, <br>     Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br> NO. 08-5449 |

## ORDER

**AND NOW,** this 4th day May, 2010, after a bench trial on the limited issue of whether a "phantom vehicle" was responsible for the accident, and for the reasons set forth in the Court's Memorandum Opinion, the Court finds that the accident was caused by the negligence of an unidentified vehicle.

It is further **ORDERED** that the **STAY** on New Hampshire Insurance Company's Motion to Intervene [Doc. No. 12] is **LIFTED.** Any party wishing to respond to the Motion may do so within **fourteen (14) days** of the date of this Order.

It is so **ORDERED.**

                                                    **BY THE COURT:**

                                                  **/s/ Cynthia M. Rufe**

                                                  **CYNTHIA M. RUFE, J.**